**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHORIZO TRENAY GROVES,   :
Plaintiff        :    CIVIL ACTION
     v.      :
KILOLO KIJAKAZI,     :
Acting Commissioner of the Social :
Security Administration    :    NO.  21-5455

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE        June 30, 2022

   Chorizo Trenay Groves ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

## I.   PROCEDURAL HISTORY[1]

   On May 20, 2014, Plaintiff applied for SSI, alleging disability, based upon physical and mental health impairments.  Pl. Br. at 2.  The claim was denied initially, therefore, Plaintiff requested a hearing.  *Id.*  Plaintiff had her first hearing before Administrative Law Judge Henry Oliver, on June 17, 2016.  R. 93-117.  ALJ Miller, in a decision dated July 26, 2016, found that Plaintiff was disabled, because she medically equaled Listed Impairments 12.04 and 12.06.  R. 157-60.  The Social Security Administration's Appeals Council vacated this decision and

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issue in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

remanded it, on December 22, 2016.  R. 161-67.

On remand, ALJ Oliver held a second administrative hearing, on April 14, 2017.  R. 69-92.  This time, he found that Plaintiff was not disabled, in a decision dated April 17, 2018.  R. 172-85.  On December 13, 2019, the Appeals Council remanded this decision to a new ALJ, based upon Plaintiff's Appointments Clause challenge to ALJ Oliver.  R. 195-96.

On June 1, 2020, in compliance with COVID restrictions, Plaintiff, represented by current counsel, and vocational expert Donna Nealon ("the VE") testified, *via* telephone, at a remote hearing conducted by a new ALJ. Margaret M. Gabell, ("the ALJ").  R. 43-68.  In a decision dated March 10, 2021, the ALJ, using the sequential evaluation process for disability, found that Plaintiff was not disabled.[2]  R. 16-31.  The Appeals Council denied Plaintiff's request for review, on October 12, 2021, making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.920(b).

2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.920(c).

3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 416.920(d).

4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 416.920(f).

5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 416.920(g).

## II.    FACTUAL BACKGROUND

A.    <u>Personal History</u>

Plaintiff, born on July 24, 1974, R. 29, was 39 years old on the application date and 46 years old on the day the ALJ decided her case.  She has a high school education, R. 29,  lives with her mother and aunt, R. 50, has no children, R. 50, and last worked in 2009.  R. 54.

B.    <u>Plaintiff's Testimony</u>

At the June 1, 2020 remote hearing, Plaintiff testified about her physical and mental impairments.  R. 46-61.  Plaintiff has a history of depression and seizures. R. 54.  She never obtained a driver's license, because of her seizures; she claimed that her doctor threatened to report her if she tried to get a license.  R. 55.  Plaintiff estimated that her last seizure occurred in 2015. R. 54.  She testified that the medication she had been taking for the last five years successfully prevented seizure activity.  R. 55.

Plaintiff also suffers asthma and panic attacks.  R. 55.  To treat her asthma, Plaintiff uses a breathing machine every other day and an inhaler every two hours.  R. 56.  Various triggers cause her panic attacks; and, at the time of the hearing, Plaintiff was concerned about recurrence of her colon cancer.  R. 56.  Before she had cancer, thinking about her problems, such as her inability to work, triggered panic attacks.  R. 57.  During a panic attack, Plaintiff feels pressure in her chest and has difficulty breathing.  R. 56.

Plaintiff seeks mental health treatment at Penndel Mental Health.  R. 57.  During the COVID pandemic, her appointments in 2020 were remote, R. 57, and she could not be certain which therapist she would see at each appointment.  R. 59.

On June 11, 2020, Plaintiff was scheduled to revisit her oncologist.  R. 59.  She expected more blood work to be done to see if her cancer had recurred; her oncologist advised that cancer

could recur.  R. 60.  As a result of surgery to remove the cancer, Plaintiff still has abdominal pain. R. 61.  She is not allowed to lift anything heavy and uses a walker in order to prevent her from falling and hitting her stomach.  R. 61.

Finally, Plaintiff has left shoulder pain, from a dislocated shoulder.  R. 61.  Because of her other health problems, Plaintiff has not treated this condition.  R. 61.

C.    Vocational Expert

The VE classified Plaintiff's past jobs as follows:  (1) industrial truck operator was semi-skilled,[3] medium[4] work; (2) housekeeper-cleaner was unskilled,[5] light[6] work; and (3) cashier was unskilled, light work.  R. 62.  The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who was able to perform light work with additional limitations:  able to perform occasional postural activities; unable to climb ladders, ropes, or scaffolds; must avoid unprotected heights; able occasionally to climb ramps/stairs; unable to operate moving machinery; unable to drive; must avoid temperature extremes and moderate exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas; able to perform occasional overhead reaching and lifting; able to perform unskilled simple routine tasks; able to make simple decisions; able to tolerate occasional changes in the workplace; able to tolerate occasional interaction with coworkers and supervisors but no direct public interaction.  R. 63-64.  The VE responded that this person could perform Plaintiff's past job as a housekeeper-cleaner.  R. 64.  In addition, the

---

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 416.968(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 416.968(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

4

individual could perform three alternative jobs:  (1) marker (2.1 million positions nationally); (2) sorter (577,000 positions nationally); and (3) office helper (75,000 positions nationally).  R. 64-65.

Next, if the individual could not perform any overhead reaching and lifting, Plaintiff's past work would be precluded, but the other three jobs would remain.  R. 65.  The VE also explained that, if the individual would require two to three rest breaks of ten to fifteen minutes each, in addition to normally scheduled rest breaks, the individual could not sustain employment.  R. 65-66.  Finally, if the person was off-task ten to fifteen percent of the workday or missed one day of work per week, she could not sustain employment; however, missing one to two days of work per month was acceptable.  R. 66.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] has not engaged in substantial gainful activity since May 20, 2014, the application date (20 CFR 416.971 *et seq.*).

2.    [Plaintiff] has the following severe impairments: dislocated left shoulder/impingement and osteoarthritis; seizure disorder; asthma; depressive disorder; anxiety; post-traumatic stress disorder (PTSD); and colon cancer (20 CFR 416.920(c)).

3.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasional postural activities,  no climbing ladders, ropes, or scaffolds; no unprotected heights; occasional[ly] climb ramps/stairs; no operating moving machinery; and no driving.  Avoid temperature

extremes and moderate exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas. Occasional overhead reaching and lifting. Can perform unskilled simple routine tasks; make simple decisions; occasional changes in the workplace; occasional interaction with coworkers and supervisors but no direct public interaction.

5.   [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6.   [Plaintiff] was born on July 24, 1974 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   [Plaintiff] has at least a high school education (20 CFR 416.964).

8.   Transferability of job skills is not an issue because using the Medical Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969, and 416.969a).

10.  [Plaintiff] has not been under a disability, as defined in the Social Security Act, since May 20, 2014, the date the application was filed (20 CFR 416.920(f)).

R. 18-20, 29-31.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.        Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform any of her past relevant work, she could perform other light jobs that exist in the national economy and, hence, was not disabled.  R. 16-31.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by failing to provide adequate reasons for discounting the opinions of psychological experts Anthony Galdieri, Ph.D., Nicole Martinez, Ph.D., and Lindsey Wilner, Psy.D.  Pl. Br. at 7-16.  The Commissioner denies Plaintiff's assertions.  Resp. at 3-18. This court finds that the ALJ committed reversible error when she:  (1) discounted Dr. Galdieri's opinion that Plaintiff medically equaled Listed Impairments 12.04 and 12.06; and (2) ignored Dr. Martinez's opinion that Plaintiff medically equaled Listed Impairment 12.04.  These errors are reversible and require remand.

1.    The ALJ Committed Reversible Error when Discounting Dr. Galdieri's Opinions

On June 27, 2016, Dr. Galdieri completed Mental Medical Expert Interrogatories, R. 816-19, and a Revised Medical Source Statement of Ability to do Work-Related Activities (Mental). R. 820-28.  Dr. Galdieri did not examine Plaintiff, instead, he reviewed Plaintiff's available medical records.  R. 817.  He diagnosed Plaintiff with Affective Disorder and Anxiety Disorder (PTSD).  R. 817.  Dr. Galdieri was provided the Social Security Administration's Listing of

Impairments for Mental Disorders and opined that Plaintiff **medically equaled** – **not that she met** – Listed Impairments 12.04 and 12.06, so long as her physical impairments have more than minimal effect on her functioning.  R. 827.  Dr. Galdieri declined to assess Plaintiff's mental residual functional capacity ("RFC").  R. 821-26.

In the first decision, ALJ Oliver gave great weight to Dr. Galdieri's opinion, determined that Plaintiff's physical impairments more than minimally affected her functioning, and found that Plaintiff was disabled, because she medically equaled Listed Impairments 12.04 and 12.06.  R. 157-60.  Hence, if the ALJ erred in rejecting Dr. Galdieri's opinion, the error would be reversible, not harmless.

The ALJ decided to afford little weight to Dr. Galdieri's opinion, because the doctor:  (1) failed to support his findings with references to the record; (2) did not indicate why he thought Plaintiff's mental impairments were severe, how they met the listing, or what B criteria he found; (3) did not consider Plaintiff's drug use; and (4) made a speculative assessment about Plaintiff's physical impairments, which were beyond his expertise.  R. 25-26.  This court may only consider these explanations, because they were the ones the ALJ actually relied upon.  *Fargnoli*, 247 F.3d at 44 n.7 (citing *S.E.C. v. Chenery*, 318 U.S. 80, 87 (1943)).

The ALJ's explanations are all inadequate and/or erroneous.  First, Dr. Galdieri did support his findings with references to the record.  He noted that Plaintiff's provided medical records were sufficient for him to render his opinions.  R. 817.   Dr. Galdieri cited certain specific records as providing support for his findings (Exhibits B3F, B7F, B8F), R. 817, and he stated there were no conflicts in the medical evidence he had reviewed.  R. 818.  Second, Dr. Galdieri identified Plaintiff's mental impairments, R. 817, which the ALJ found were severe.  R. 18.  Since the ALJ concluded that Plaintiff's mental impairments were severe, her criticism of Dr. Galdieri regarding

their severity is contradictory. The ALJ's criticism is also erroneous, because Dr. Galdieri did not opine that Plaintiff **met** any listing. Instead, he opined that she medically equaled two listings. Third, contrary to the ALJ's criticism, Dr. Galdieri did consider Plaintiff's history of substance abuse, R. 817, 819; furthermore, the ALJ found that Plaintiff's history of substance abuse was not material to the disability determination. R. 18. Hence, it was illogical for her to even mention this history. Finally, Dr. Galdieri did not make any speculative assessment about Plaintiff's physical condition, but, rather, opined that, if Plaintiff had any severe physical impairments, she would medically equal Listed Impairments 12.04 and 12.06. R. 827. The ALJ herself found that Plaintiff had severe, physical impairments, in addition to severe mental impairments. R. 18.

Comparison of the ALJ's criticisms of Dr. Galdieri's opinions with what Dr. Galdieri actually wrote and opined, with the state of the record, and with the ALJ's own findings, reveal that the ALJ's criticisms amount to "wrong reasons" for rejecting Dr. Galdieri's opinion. *See Mason*, 994 F.2d at 1066. Hence, they cannot stand. *Id.* The ALJ's error is not harmless, because Dr. Galdieri's opinion supports a finding that Plaintiff is disabled. Since this court cannot supply reasons which might support the ALJ's decision, other than the ones she relied upon, *Fargnoli*, 247 F.3d at 44 n.7 (citation omitted), this case must be remanded so that the ALJ can properly determine whether Dr. Galdieri's medical equivalency opinion properly may be rejected. If not, then Plaintiff should be found disabled.

### 2. The ALJ Committed Reversible Error when Considering Dr. Martinez's Opinions

On April 20, 2017, Dr. Martinez completed Mental Medical Expert Interrogatories, R. 885-88, and a Revised Medical Source Statement of Ability to do Work-Related Activities (Mental). R. 889-901. Like Dr. Galdieri, she did not examine Plaintiff, but relied upon Plaintiff's medical records. R. 886. She diagnosed Plaintiff as suffering from depression and PTSD. Like Dr.

Galdieri, she had been provided with the Social Security Administration's Listing of Mental Impairments and opined that Plaintiff met and medically equaled Listed Impairment 12.04.  R. 887.  Like Dr. Galdieri, she found that no medical records conflicted with her opinion.  R. 887.

Unlike Dr. Galdieri, Dr. Martinez did opine about Plaintiff's mental RFC.  R. 890-93.  She opined that Plaintiff had little impairment of understanding and memory, sustained concentration and persistence, social interaction and adaptation.  R. 890-91.  That doctor further opined that Plaintiff would be limited to simple, work-related decisions, could only perform simple, routine, repetitive tasks, and would miss two days of work per month.  R. 892-93.

The ALJ noted that Dr. Martinez opined that Plaintiff met and equaled Listed Impairment 12.04.  R. 26.  She also listed all of Dr. Martinez's findings from the two reports she had completed.  R. 26.  The ALJ then rejected Dr. Martinez's opinions because: (1) Dr. Martinez only had access to one medical report, Exhibit B12F; (2) her opinion that Plaintiff meets Listed Impairment 12.04 is unsupported because she made no findings of marked limitation in any area of mental functioning; and (3) the doctor identified October 1, 2015 as the onset date but did not explain why she selected that date.  R. 26.  Notably, the ALJ provided no explanation for rejecting Dr. Martinez's opinion that Plaintiff medically equaled Listed Impairment 12.04.

The ALJ's explanations are problematic; two of them are unsupported by the record.  First, Dr. Martinez did not say that she only received Exhibit B12F.  Instead, she stated that Exhibit B12F was sufficient to justify her opinions about Plaintiff's diagnoses and their severity; she also assumed there were even more medical records than the ones she had reviewed.  R. 886.  Next, contrary to the ALJ's explanation, Dr. Martinez identified the basis for her selection of the onset date as Exhibit B12F.  R. 887.  That exhibit contains treatment records from October 2015 to February 2017.  Hence, Dr. Martinez's selection of the onset date is documented and explained.

11

Finally, while the ALJ did provide justification for rejecting Dr. Martinez's opinion that Plaintiff did not meet Listed Impairment 12.04, she ignored the doctor's finding that Plaintiff medically equaled that listing.  Again, this court may only consider the explanations the ALJ provides. *Fargnoli*,  247 F.3d at 44 n.7 (citation omitted).  Since those explanations are defective and the ALJ completely ignored one relevant opinion, her error is reversible.  On remand, the ALJ shall reconsider Dr. Martinez's opinions in light of the evidence she actually cited and consider for the first time whether to accept Dr. Martinez's opinion that Plaintiff medically equals Listed Impairment 12.04.

   3.   The ALJ did not Commit Reversible Error when Considering Dr. Wilner's Opinions

Dr. Wilner examined Plaintiff, *via* Zoom, on July 25, 2020.  R. 1200.  She prepared a narrative report, R. 1200-05, and a Medical Source Statement of Ability to do Work-Related Activities (Mental).  R. 1206-08.  Dr. Wilner diagnosed Plaintiff as suffering from specific learning disorder, major depressive disorder, panic disorder, PTSD, alcohol and cannabis use disorder in sustained remission.  R. 1204.  The doctor opined that Plaintiff was moderately or markedly limited in the areas of understanding and carrying out simple to complex instructions, R. 1206, and moderately limited in the ability to interact with co-workers, supervisors and the public.  R. 1207.  Dr. Wilner also noted that Plaintiff reported that, at times, she needed her mother to assist her with bathing, grooming, dressing, cleaning, cooking, shopping, and money management.  R. 1207.

The ALJ accepted Dr. Wilner's opinions that Plaintiff had moderate limitation in the ability to interact with co-workers, supervisors and the public.  R. 27.  However, she rejected the doctor's opinions that Plaintiff was moderately or markedly limited in the ability to understand and carry out simple to complex instructions.  R. 27.  The ALJ explained that these limitations were unsupported by:  (1) Dr. Wilner's own examination of Plaintiff; (2) the objective medical evidence;

12

and (3) mental status exams which indicate that Plaintiff's memory is intact.  R. 27.

The court notes that, even if the ALJ's assessment of Dr. Wilner's opinions was not supported properly, those opinions do not support a finding of disability.[7]  Hence, any error as to the ALJ's explanation of her assessment of Dr. Wilner's opinions would be harmless.  *See Rutherford*, 399 F.3d at 553.  Accordingly, it is unnecessary to consider whether the ALJ's assessment of Dr. Wilner's opinions was erroneous.

An implementing order and order of judgment follow.

---

[7] In order to meet Listed Impairments 12.04 or 12.06, Plaintiff would need extreme limitation in one or marked limitation in at least two areas of mental functioning.  *See* 20 C.F.R. Part 404, Subpart P, Appendix1, §§ 12.04(B), 12.06(B).  Dr. Wilner only found that she had no areas of extreme limitation and only one area of marked limitation. Furthermore, unlike Drs. Galdieri and Martinez, Dr. Wilner did not opine that Plaintiff medically equaled any listing.